UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID EARL WILLIAMS,

Petitioner,

v.

MICHAEL MARTEL,

Respondent.

No.  2:18-cv-2224 KJM DB P

FINDINGS AND RECOMMENDATIONS

Petitioner, a state prisoner proceeding pro se and in forma pauperis, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (ECF No. 1.)  Petitioner challenges his 2016 murder conviction.  Presently before the court is the petition (ECF No. 1), respondent's answer (ECF No. 14), and petitioner's traverse for merits review (ECF No. 19).  For the reasons set forth below the court will recommend that habeas relief be denied.

## BACKGROUND

**I.     Procedural History**

A jury found petitioner guilty of murder and he was sentenced to 25 years to life in state prison in November 2001.  Williams v. Woodford, 859 F.Supp.2d 1154, 1156 (E.D. Cal. Mar. 19, 2012).  The conviction was affirmed on appeal.  People v. Williams, No. C039886, 2003 WL 1611428 (Cal.Ct.App. Mar. 28, 2003) (unpublished).  After presenting his claims to the state court, petitioner sought federal habeas review.  On March 19, 2012, Judge Kozinski sitting as a

1

1   district judge issued an opinion granting habeas relief based on petitioner's claim of ineffective

2   assistance of trial counsel.  Williams v. Woodford, 859 F.Supp.2d 1154 (E.D. Cal. Mar. 19,

3   2012).  The state was directed to release or retry petitioner within 90 days.  Id.

4           Following the 2012 order granting habeas relief, the case was remanded, petitioner was

5   again arraigned on the original complaint, and Kelly Babineau was appointed to represent

6   petitioner on retrial.  (LD[1] 1 at 15-16.)  Babineau represented petitioner for the next several years

7   as the case proceeded toward trial.  During that time, Babineau sought and was granted numerous

8   continuances.  In support of her requests she cited, her work on other cases, difficulty in locating

9   witnesses given the age of the case, and that she was seeking funds to have DNA evidence tested.

10  (LD 1 at 90-117.)  The trial was set to begin in October 2015 and a jury was selected just before a

11  long weekend.  The trial court made clear that the jury was not being sworn because Babineau

12  was still conducting an investigation.  (LD 1 at 65-66, 294.)  On the day trial was set to begin,

13  Babineau moved to be relieved as counsel because a legal conflict had developed.  (LD 5 at 135-

14  36.)  The court granted the motion.  (Id.)  Petitioner was appointed new counsel and the case

15  again proceeded to trial.  (LD 1 at 314.)

16          Petitioner was found guilty on retrial and the conviction was affirmed on appeal.  People

17  v. Williams, No. C082104, 2017 WL 4112242 (3rd Dist. Ct. of App. Sept. 18, 2017).  Thereafter,

18  petitioner filed two petitions for writ of habeas corpus in the California Court of Appeal for the

19  Third Appellate District and two petitions for writ of habeas corpus in the California Supreme

20  Court.  (LD 19, 21, 23. 35.)  All four writs were summarily denied.  (LD 20, 22, 24, 26.)

21  Petitioner filed the instant petition for writ of habeas corpus on August 23, 2018.[2]

22  **II.      Facts Developed at Trial**

23              [Mallory] Treadwell was scheduled to take a bus to Auburn to the
            California Conservation Corps early Monday, July 27, 1998. The
24          night before, he was in Sacramento saying good-bye to family. At

25  [1] Respondent lodges the state court record here.  (See ECF No. 15.)  Documents are identified by
26  their Lodged Document number, "LD," assigned to them by respondent.

27  [2] Under the prison mailbox rule, a document is deemed served or filed on the date a prisoner signs
    the document and gives it to prison officials for mailing.  See Houston v. Lack, 487 U.S. 266, 276
28  (1988); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010).

7:40 p.m., he phoned Linda DeBiase who did not receive the message until several hours later. At about 10:00 p.m., Treadwell rode his bicycle to visit his girlfriend at her mother's house. He left about 2:00 a.m. the morning of July 27 to go to his grandmother's house on 12th Avenue in Oak Park. He never arrived.

That afternoon, a 10-year old girl, playing with her sister around a canal ditch in Rio Linda, found Treadwell's body. He was on the ground under a bridge. His pants and underwear had been pulled down and he was hog-tied with a blue-green rope. A size 60 belt was around his neck. The body was in full rigor, but there was no decomposition, indicating the time of death was 12 to 24 hours before. A trail of blood led to the roadway.

Treadwell had 13 separate injuries to his head, consistent with blunt force trauma. There were two furrow marks on his neck, one from the rope and one from the belt. The belt had fractured the hyoid bone while Treadwell was still alive. The cause of death was ligature strangulation. According to the pathologist, Treadwell would have lost consciousness in 10 to 15 seconds. If the ligatures had been released at that time, he would have regained consciousness.

The night before Treadwell's body was found, three men (John Parker, Marquist Murphy, and Billy Dee Smith) burglarized defendant's house, taking marijuana, a VCR, clothing, and jewelry. Parker lost his pager during the burglary. Defendant discovered the burglary when he returned from a late night trip to Wal-Mart. He reported the burglary to his neighbor around 2:00 a.m. on July 27. He also called his friend Corey Credic and asked him to come over. Defendant told Credic the burglar had dropped a pager. Defendant was missing a gun, clothes, jewelry, cash, a VCR, and marijuana.

Special Agent Rad Coulter with the Drug Enforcement Agency (DEA) was investigating John Wesley Jingles, defendant's brother. Defendant was the secondary target of the investigation. Coulter used Michael Roland as an informant. Roland had dealt crack cocaine with defendant in the 1980's. In the mid-1990's, Roland was indicted on a federal drug charge; he worked as an informant for the DEA to reduce his sentence. Roland came to Sacramento from Southern California when Coulter called him. The DEA provided funds that Roland used to purchase crack cocaine; one of Roland's purchases was from defendant. After that purchase, although Coulter was able to end the investigation and charge defendant, he continued the investigation to seek inroads into Jingles.

Coulter called Roland to Sacramento on July 27, and sent him to see defendant. At their first meeting, defendant and Roland discussed the price of drugs and other matters. Roland returned to defendant's residence that night and defendant told Roland he had recently pistol-whipped someone. Coulter sent Roland back wearing a recording device the next day, but there was no discussion of the pistol-whipping. Coulter told Roland to go back that evening with no surveillance. At that meeting, defendant told Roland the rest of the story.

3

Roland related that defendant had told him his house was broken into and his marijuana stolen. The burglar lost a pager and defendant found someone looking for a pager in his front yard. Defendant asked the man where he was from and the response was "Oak Park." Defendant had never seen the man before and assumed he was the burglar. Defendant tied the man to a tree and pistol-whipped him. Roland claimed variously that defendant had said he strangled the man or that one of his partners did. Defendant described the man as begging for his life and "squealing like a pig" before his neck was broken, and told Roland they had dumped the body in a ditch in Rio Linda.

Roland further reported he saw a portion of rope attached to the tree in front of defendant's residence. When Roland was visiting defendant, defendant's girlfriend showed defendant a newspaper and they mumbled and gestured. Roland got a copy of that day's Sacramento Bee and saw a story about a body found in a ditch. As soon as Coulter heard Roland's story, he contacted the local narcotics detective assigned to the DEA task force. That detective, in turn, contacted the homicide detective investigating Treadwell's death.

On July 31, 1998, officers stopped defendant's car after he left his residence and arrested him.

Defendant lived a few blocks from the home of Treadwell's grandmother. Officers searched defendant's house and found a pair of jeans with a size 60 inch waist and two large belts (size 50 inches and above). They also discovered the Metro section of the Sacramento Bee dated July 28, 1998—the day after Treadwell's body was found—in the trash. In the driveway were a carpet and a boat. A blue-green rope was behind the boat. Trace evidence examination revealed fibers on the rope used to tie Treadwell were similar in size and composition to those in that rope. Fibers on the rope and Treadwell's pants were similar to fibers on the carpet on defendant's driveway. Defendant owned dogs, and animal hairs on Treadwell's pants were within the range of animal hairs found in defendant's vehicle.

Defendant denied he killed Treadwell or even touched him. He confirmed his house was burglarized early on July 27 and marijuana, a VCR, a gun, clothes, jewelry, and cash were stolen. He found a pager he thought the burglars had dropped. Defendant claimed three other men confronted Treadwell, assaulted him, and choked him. One of these men had a gun and demanded defendant's belt which he handed over. Another came back with a car and a rope similar to the rope from defendant's boat. A dog jumped in the trunk of the car where they put Treadwell. The next day, defendant confronted one of the three men and asked what happened. The man said, "Don't worry about it, we took care of it. [¶] And it ain't your business we

took him to Rio Linda." This conversation took place in front of Roland.

A jury found defendant guilty of the first degree murder of Treadwell in 2001. A federal court reversed the conviction in 2012, finding

4

ineffective assistance of counsel. In 2016, a second jury reached the
same verdict.

People v. Williams, C082104, 2017 WL 4112242, at **1-2 (Third District Ct. of App. Sept. 18,
2017).

### STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS

To state a claim for relief cognizable in habeas a petitioner must allege a violation of the

Constitution or federal law.  28 U.S.C. § 2254(a) (A prisoner in custody pursuant to the judgment

of a state court may seek federal habeas relief "only on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States.").  Title 28 U.S.C. § 2254(d)

sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

"Clearly established federal law" means federal law that is clearly defined by the holdings of the

United States Supreme Court at the time of the state-court decision.  Cullen v. Pinholster, 563

U.S. 170, 182 (2011).  "'[C]ircuit court precedent may be persuasive in determining what law is

clearly established and whether a state court applied that law unreasonably.'"  Stanley v. Cullen,

633 F.3d 852, 859 (9th Cir. 2011) (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).

In determining whether a decision is "contrary to" clearly established federal law, a

reviewing court must evaluate whether the decision "'applies a rule that contradicts [such] law'"

and how the decision "'confronts [the] set of facts' that were before the state court."  Cullen, 563

U.S. at 182 (quoting Williams v. Taylor, 529 U.S. 362, 405, 406 (2000)).  If the state decision

"'identifies the correct governing legal principle' in existence at the time," a reviewing court must

assess whether the decision "'unreasonably applies that principle to the facts of the prisoner's

1   case.'"  Id. (quoting Wllaims, 529 U.S. at 413).  An "*unreasonable* application" of law is

2   "'different from an *incorrect* application'" of that law.  Harrington v. Richter, 562 U.S. 86, 101

3   (2011) (quoting Williams, 529 U.S. at 410) (emphasis in original).  A state-court decision based

4   on a factual determination may not be overturned on habeas review unless the factual

5   determination is "'objectively unreasonable in light of the evidence presented in the state-court

6   proceeding.'"  Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (quoting Davis v. Woodford,

7   384 F.3d 628, 638 (9th Cir. 2004)).

8          "[A] federal habeas court may not issue the writ simply because that court concludes in its

9   independent judgment that the relevant state-court decision applied clearly established federal law

10  erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams, 529

11  U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer v. Andrade, 538

12  U.S. 63, 75 (2003) ("It is not enough that a federal habeas court, in its independent review of the

13  legal question, is left with a firm conviction that the state court was erroneous." (internal citations

14  and quotation marks omitted.)).  "A state court's determination that a claim lacks merit precludes

15  federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state

16  court's decision."  Richter, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664

17  (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state

18  prisoner must show that the state court's ruling on the claim being presented in federal court was

19  so lacking in justification that there was an error well understood and comprehended in existing

20  law beyond any possibility for fairminded disagreement."  Id. at 103.

21         The court looks to the last reasoned state court decision as the basis for the state court

22  judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

23  "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from

24  a previous state court decision, [this court] may consider both decisions to 'fully ascertain the

25  reasoning of the last decision.'"  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

26  banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)).  "When a federal claim

27  has been presented to a state court and the state court has denied relief, it may be presumed that

28  the state court adjudicated the claim on the merits in the absence of any indication or state-law

1    procedural principles to the contrary." <u>Richter</u>, 562 U.S. at 99. This presumption may be

2    overcome by showing "there is reason to think some other explanation for the state court's

3    decision is more likely." <u>Id.</u> at 99-100 (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991)).

4    Similarly, when a state court decision on a petitioner's claims rejects some claims but does not

5    expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that

6    the federal claim was adjudicated on the merits. <u>Johnson v. Williams</u>, 568 U.S. 289, 293 (2013).

7        A summary denial is presumed to be a denial on the merits of petitioner's claims. <u>Stancle</u>

8    <u>v. Clay</u>, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). On federal habeas review, the district court

9    reviews the decision of the highest state court to address the merits of the petitioner's claim in a

10   reasoned decision. <u>See Ylst</u>, 501 U.S. at 803-04. In the absence of a decision from the highest

11   state court, the Court "looks through" to the "last reasoned decision" addressing the particular

12   claim. <u>Id.</u>; <u>Shackleford v. Hubbard</u>, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

13                              **DISCUSSION**

14       Petitioner alleges he is entitled to habeas relief because: (1) his right to a speedy trial was

15   violated; (2) trial counsel rendered ineffective assistance of counsel; (3) appellate counsel was

16   ineffective for failing to raise a speedy trial claim on appeal; (4) jeopardy attached when a jury

17   was selected; and (5) the 2012 order granting relief was violated. (ECF No. 1, 19.)

18       Respondent argues petitioner's speedy trial rights were not violated, appellate counsel was

19   not ineffective for failing to raise a speedy trial right on appeal, jeopardy had not attached when

20   the jury was released, and to the extent petitioner sought to challenge the 2012 order, his remedy

21   was to appeal that court's decision. (ECF No. 14.)

22   **I.    Speedy Trial**

23       Petitioner alleges his right to a speedy trial was violated. (ECF No. 1 at 7.) He argues

24   that the federal court order granting habeas relief and remanding the case instructed that retrial

25   was to commence within 90 days of the court's order. He concludes that because his retrial did

26   not commence within 90 days the court should invalidate his conviction.

27   ////

28   ////

Respondent argues the state court reasonably rejected petitioner's speedy trial claim because trial counsel requested continuances and waived speedy trial rights on the record.  (ECF No. 14 at 12-13.)

**A.  Legal Standard**

Criminal defendants have "the right to a speedy and public trial."  U.S. Const., amend. VI; see also Doggett v. United States, 505 U.S. 647, 651 (1992).  The determination of whether a defendant's right to a speedy trial was violated is a fact-based inquiry that requires balancing various factors of the case, including: (1) the length of the delay, (2) the reason for the delay; (3) the defendant's assertion of his right, and (4) prejudice to the defendant.  Barker v. Wingo, 407 U.S. 514, 530 (1972).  No one factor is necessary or sufficient and there is no affirmative demonstration of prejudice necessary to prove a violation of the right to a speedy trial; instead, the four related factors "must be considered together with such other circumstances as may be relevant."  Moore v. Arizona, 414 U.S. 25, 26 (1973) (per curiam) (citation omitted).

The length of delay serves as a "triggering mechanism."  Barker, 407 U.S. at 430.  Generally, a post-accusation delay is deemed "'presumptively prejudicial'" when it approaches one year.  Doggett, 505 U.S. at 652 n.1.  If the delay passes the minimum threshold, the court must then consider "as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."  Id. at 652.

**B.  Analysis**

**1.  Length of the Delay**

The delay between the time the complaint was reimposed in May 2012 (LD 1 at 15) and when the trial began on March 1, 2016 (LD 6 at 17) was almost four years.  The delay was well over a year and therefore warrants consideration of the remaining Barker factors.  United States v. Mendoza, 530 F.3d 758, 762 (9th Cir. 2008) ("If the length of delay is long enough to be considered presumptively prejudicial, an inquiry into the other three factors is triggered.").

**2.  Reason for the Delay**

The reason for the delay is attributable to the numerous continuances requested by trial counsel, Kelly Babineau.  Delays caused by defense counsel, including requests for continuances,

8

are properly attributed to the defendant.  Vermont v. Brillon, 556 U.S. 81, 90-91 (2009) ("delay caused by the defendant's counsel is also charged against the defendant").

In support of her requests for continuances Babineau cited her work on other cases, the difficulty in locating witnesses given the age of the case, and that she was seeking funds to have DNA evidence tested.  (LD 1 at 90-117.)  Additionally, it is clear from the record that the delay was attributable to petitioner and not based on any delay on the part of the state.  (LD 14 at 20-21.)  This factor weighs against petitioner.

### 3.  Defendant's Assertion of his Right

If a defendant asserts his speedy trial rights after requesting continuances, this factor does not weigh in favor of finding a speedy trial violation.  See United States v. Corona-Verbera, 509 F.3d 1105, 1116 (9th Cir. 2007).  However, a petitioner who both asserts speedy trial rights and consents to exclusions of time could weigh in favor of finding a speedy trial violation.  United States v. King, 483 F.3d 969, 976 (9th Cir. 2007) (third Barker factor did "not strongly counsel in favor of finding a Sixth Amendment violation" because "[a]lthough [petitioner] at times asserted his right to a speedy trial, at other times he acquiesced in and sought continuances and exclusions of time").

There is no indication in the record that petitioner asserted his speedy trial rights while Babineau sought continuances.  The court notes that petitioner filed two documents in his prior federal habeas case indicating that he was dissatisfied with the delays in proceeding towards retrial.  See Williams v. Woodford, No. 2:05-cc-0980 AK, (E.D. Cal.) (ECF Nos. 47, 51.)  However, there is no indication the trial court was aware of plaintiff's objections to the continuances.  Petitioner raised a speedy trial argument through counsel after trial and expressed frustration at being caught off guard by Babineau's recusal (LD 5 at 142-43).  However, he did not clearly object on the record until after the trial concluded.  Accordingly, this factor weighs against petitioner.

////

////

////

9

1

### 4. Prejudice

The Supreme Court has identified three types of prejudice caused by excessive delay: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) impairment of the defense. Barker, 407 U.S. at 532.

Because petitioner had already spent significant time in custody, the additional time spent in custody awaiting retrial likely had little impact on the first two prejudice factors. McKinstry v. Chappell, No. 1:13-cv-0088 AWI JMS (HC), 2014 WL 5485607 at *22 (E.D. Cal. Oct. 29, 2014). Petitioner has indicated that "two critical and essential defense witnesses" were lost as a result of the delay. (ECF No. 19 at 12.) However, many of the continuances were sought because those witnesses could not be located. The record indicates that one of the witnesses, Mr. Webster, was reluctant to testify in this action (LD 5 at 59-60.) and another, Ms. Oliphant, had been subpoenaed but was "not exactly compliant." (LD 5 at 217.) The court finds that petitioner has failed to show that he was prejudiced by the delay because it is not clear whether these witnesses would have testified, or if that testimony would have been helpful to the defense, if the trial had taken place sooner.

Petitioner is not entitled to relief based on his argument that his speedy trial rights were violated. Specifically, petitioner has failed to satisfy the "unreasonable application" prong of § 2254(d)(1) by showing that there was no reasonable basis for the state courts' rejection of his speedy trial claim.

### II.    Ineffective Assistance of Counsel

Petitioner argues that trial counsel asked for numerous continuances, failed to test DNA evidence, did not disclose her marriage to a district attorney, and withdrew just as the retrial was set to take place. (ECF No. 1 at 7.) Respondent argues that the state court reasonably rejected petitioner's claim that counsel was ineffective in failing to raise a speedy trial claim on appeal. (ECF No. 14 at 11-13.) Respondent's answer does not address petitioner's allegations related to trial counsel's actions.

////

////

10

1

**A. Legal Standards – Ineffective Assistance of Counsel**

2        To succeed on a claim of ineffective assistance of counsel, a petitioner must show that (1)

3   his counsel's performance was deficient and that (2) the "deficient performance prejudiced the

4   defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel is constitutionally

5   deficient if his or her representation "fell below an objective standard of reasonableness" such

6   that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at

7   687–88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive

8   the defendant of a fair trial, a trial whose result is reliable.'" Harrington v. Richter, 562 U.S. 86,

9   104 (2011) (quoting Strickland, 466 U.S. at 687).

10       A reviewing court is required to make every effort "to eliminate the distorting effects of

11  hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

12  conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see Richter, 562

13  U.S. at 107. Reviewing courts must also "indulge a strong presumption that counsel's conduct

14  falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

15  This presumption of reasonableness means that the court must "give the attorneys the benefit of

16  the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel

17  may have had for proceeding as they did." Pinholster, 563 U.S. at 196 (internal quotation marks

18  and alterations omitted).

19       Prejudice is found where "there is a reasonable probability that, but for counsel's

20  unprofessional errors, the result of the proceeding would have been different." Strickland, 466

21  U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the

22  outcome." Id. "The likelihood of a different result must be substantial, not just conceivable."

23  Richter, 562 U.S. at 112. A reviewing court "'need not determine whether counsel's performance

24  was deficient before examining the prejudice suffered by the defendant as a result of the alleged

25  deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of

26  sufficient prejudice . . . that course should be followed.'" Pizzuto v. Arave, 280 F.3d 949, 955

27  (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697), amended and superseded on other grounds,

28  ////

11

1   385 F.3d 1247 (9th Cir. 2004); United States v. Ray, No. 2:11-cr-0216-MCE, 2016 WL 146177,

2   at *5 (E.D. Cal. Jan. 13, 2016) (citing Pizzuto, 280 F.3d at 954).

3          **B. Analysis**

4          **1. Trial Counsel – Babineau**

5          Petitioner argues that Babineau acted as an arm for the prosecution because she married a

6   district attorney, failed to test potentially exculpatory DNA evidence, and witnesses were lost as a

7   result of the delay caused by the numerous continuances.  (ECF No. 1 at 7.)  Respondent has not

8   addressed petitioner's arguments related to trial counsel's alleged ineffectiveness in the answer.

9   The court will analyze each alleged basis of ineffectiveness below.

10          **a. Requests for Continuances and Recusal**

11          Petitioner alleges that Babineau was ineffective for requesting numerous continuances

12   over his objection and in violation of his right to a speedy trial.  (ECF No. 1 at 7.)  In support of

13   her requests for continuances Babineau cited her work on other cases, the difficulty in locating

14   witnesses given the age of the case, and that she was seeking funds to have DNA evidence tested.

15   (ECF No. 15-1 at 90-117.)  Petitioner further argues that Babineau's request for recusal as trial

16   was set to begin violated his right to counsel.

17          "Scheduling matters are plainly among those for which agreement by counsel generally

18   controls."  New York v. Hill, 528 U.S. 110, 115 (2000).  "[T]he Supreme Court has held that an

19   attorney may waive his client's speedy trial right without express permission because

20   '[s]cheduling matters are plainly among those for which agreement by counsel generally

21   controls,' and '[r]equiring express assent from the defendant himself for such routine and often

22   repetitive scheduling determinations would consume time to no apparent purpose.'"  Cejas v.

23   Blanas, 366 Fed.Appx. 763, 765 (9th Cir. 2010) (quoting Hill, 528 U.S. at 114-15).

24          Babineau's decision to request continuances is imputed to petitioner.  Vermont, 556 U.S.

25   at 90-91 ("delay caused by the defendant's counsel is also charged against the defendant").  It

26   does not appear from the record that the continuances were sought for an improper purpose.

27   Rather, the record indicates that Babineau was working to secure evidence and witnesses right up

28   until the conflict occurred.  (See e.g., LD 1 at 257; LD 5 at 99.)  There is no indication in the

1  record to support petitioner's argument that Babineau had no intent to try the case.  Accordingly,

2  the court declines to find that trial counsel was ineffective based on her requests for continuances.

3       Additionally, her request to be relieved as counsel on the day trial was set to begin does

4  not amount to ineffective assistance of counsel.  The trial court was satisfied that an irreconcilable

5  conflict had developed and granted the motion.  (LD 5 at 135-37.)  There is nothing in the record

6  that would support a finding that counsel's request to be relieved was objectively unreasonable,

7  and therefore, petitioner cannot show that such conduct violated his right to effective assistance of

8  counsel.  See Hall v. Ozmint, No. 0:09-cv-0330-RBH, 2010 WL 1068979 at *6 (D.S.C. Mar. 18,

9  2010) (declining to find trial counsel ineffective for seeking to be relieved on the morning of trial

10  because record indicated valid basis for the motion to be relieved); see also Strickland, 466 U.S.

11  at 689 ("Judicial scrutiny of counsel's performance must be highly deferential," and "a court must

12  indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

13  professional assistance.").

14       Accordingly, petitioner is not entitled to relief based on his argument that Babineau

15  rendered ineffective assistance by seeking continuances and moving to be relieved as trial was set

16  to commence.

17  **b.  Marriage to District Attorney**

18       Petitioner alleges that trial counsel acted as an arm for the prosecution based on her

19  marriage to a district attorney.  (ECF No. 1 at 5, 7.)  However, he fails to provide evidence to

20  support this argument.

21       The court notes that it is petitioner's burden to show that he is entitled to relief.  Toomey

22  v. Bunnell, 898 F.2d 741, 743 (9th Cir.), cert. denied, 498 U.S. 960 (1990) (A habeas petitioner

23  has the burden of showing through evidentiary proof that counsel's performance was deficient);

24  see also Rios v. Rocha, 299 F.3d 796, 813 n.23 (9th Cir. 2002) (rejecting two ineffective

25  assistance of counsel claims based on petitioner's failure to produce evidence of prejudice).

26       Other than tactical decisions he disagreed with; petitioner has not pointed to any instance

27  in which Babineau failed to act on his behalf.  Accordingly, petitioner is not entitled to relief on

28  the basis that trial counsel acted as an arm for the prosecution.  Jones v. Gomez, 66 F.3d 199, 204

1  (9th Cir. 1995) ("It is well-settled that '[c]onclusory allegations which are not supported by a

2  statement of specific facts do not warrant habeas relief.'" (citation omitted)); James v. Borg, 24

3  F.3d 20, 26 (9th Cir. 1994) (rejecting ineffective assistance of counsel claim based on

4  unsupported allegations and noting that "[c]onclusory allegations which are not supported by a

5  statement of specific facts do not warrant habeas relief").

6      Additionally, the California state bar issued guidance regarding a marriage between a

7  district attorney and a public defender. See Cal.St.Bar.Comm.Prof.Resp., Formal Op 1984-83

8  (1984), 1984 WL 50107. Situations where a defense attorney represents a client being prosecuted

9  by a colleague of the district attorney spouse does not require disclosure to the client. (Id. at *7.)

10 Thus, Babineau's marriage to a deputy district attorney did not violate any ethical rule let alone

11 petitioner's Sixth Amendment right to counsel.

12     Accordingly, he has failed to show that he was deprived of effective representation based

13 on Babineau's marriage to a district attorney.

14                          **c. DNA Evidence**

15     Petitioner has argued that he was prejudiced by Babineau's failure to have DNA evidence

16 tested. (ECF No. 1 at 5.) The record indicates that Babineau sought additional time to obtain

17 funds to conduct DNA testing but does not indicate whether she ever received funds or decided to

18 forgo testing for some other reason. It is possible that Babineau decided DNA testing was too

19 risky. See Mack v. Sisto, 2012 WL 3018205, at *13 (C.D. Cal. May 9, 2012) (counsel could have

20 made a reasonable strategic decision that performing blood and fingerprinting tests on knife found

21 at crime scene would be "too risky" "since petitioner's fingerprints or DNA might be found),

22 Report and Recommendation accepted by 2012 WL 3018159 (C.D. Cal. July 23, 2012); Zuniga v.

23 Small, 2009 WL 3164895, at *20 (C.D. Cal. Sept. 27, 2009) ("[P]etitioner's trial counsel could

24 have reasonably concluded that testing a box cutter was too risky because of the possibility that

25 petitioner's fingerprints or DNA would be found.").

26     Given that there is a potentially reasonable basis for Babineau's failure to have DNA

27 evidence tested, the court declines to find that the state courts' rejection of this claim was

28 objectively unreasonable.

1

**d. Loss of Witnesses**

2      "In order to show ineffective assistance of counsel based on the failure to call a witness,

3   the defendant must show that the particular witness was willing to testify, see United States v.

4   Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988); what his or her testimony would have been, see

5   United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987); and that his or her testimony would

6   have been sufficient to create a reasonable doubt as to guilt, see Tinsley v. Borg, 895 F.2d 520,

7   532 (9th Cir. 1990). Generally, this requires the submission of affidavits from the witnesses

8   themselves. See Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000); Harden, 846 F.2d at 1231-32

9   (denying ineffective assistance of counsel claim based on failure to call a witness because "[t]here

10  is not evidence in the record which establishes that [the witness] would [have] testif[ied]").

11     Petitioner has failed to allege with specificity in the body of the petition which witnesses

12  were lost as a result of the continuances.  Additionally, petitioner has not provided any evidence

13  in the form of either affidavits or declarations stating whether any such witnesses were willing to

14  testify or the facts to which they would have testified.  See Dows, 211 F.3d at 486 (denying relief

15  on ineffective assistance of counsel claim based on failure to call witnesses where petitioner

16  presented no affidavit from witnesses showing that witness willing to provide helpful testimony

17  to petitioner).  Accordingly, the court cannot grant relief based on the loss of witnesses as a result

18  of Babineau's request for multiple continuances or recusal on the eve of trial.

19

**2.  Appellate Counsel**

20     Petitioner alleges his appellate counsel was ineffective for failing to raise the argument

21  that his right to a speedy trial was violated. (ECF No. 1 at 5.)  Respondent argues that appellate

22  counsel's failure to raise the issue was reasonable because the speedy trial argument was

23  meritless.  (ECF No. 14 at 12.)

24     With respect to the reasonableness of appellate counsel's conduct, the Sixth Amendment

25  does not require appellate counsel to raise every non-frivolous claim suggested by the client.  See

26  Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir.

27  1997); Miller v. Keeney, 882 F.2d 1428, 1434 n.10 (9th Cir. 1989).  Further, even if counsel had

28  raised those claims, petitioner cannot show prejudice because there is no reasonable probability

15

that they would have succeeded. "'[W]hen counsel focuses on some issues [and excludes] others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect.'" Jacobs v. Horn, 395 F.3d 92, 118 (3d Cir. 2005) (quoting Yarborough v. Gentry, 540 U.S. 1, 8 (2003)).   As discussed above, petitioner's right to a speedy trial was not violated. Accordingly, appellate counsel was not ineffective for failing to raise the argument.

### III.   Double Jeopardy

Petitioner argues that the court should find that jeopardy constructively attached because a jury was chosen, but ultimately discharged, when Babineau moved for and was relieved of the duty to represent petitioner just before trial was set to begin. (ECF No. 1 at 7.)   Respondent argues that the California court reasonably rejected petitioner's double jeopardy claim because the jurors had not yet been sworn when they were discharged. (ECF No. 14 at 13.)

### A.   Legal Standards – Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment protects individuals "from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." Green v. United States, 355 U.S. 184, 187 (1957).   "In determining whether the prohibition against double jeopardy has been invoked, courts found it necessary to 'define a point in criminal proceedings at which the constitutional purposes and policies are implicated by resort to the concept of attachment of jeopardy.'"   United States v. Vaughan, 715 F.2d 1373, 1376 (9th Cir. 1983) (quoting Serfass v. United States, 420 U.S. 377, 388 (1975)).   Jeopardy attaches when "the jury is empaneled and sworn." Crist v. Bretz, 437 U.S. 28, 35 (1978).

### B.   Analysis

Petitioner alleges that the jury was selected and had received instructions.   However, petitioner acknowledges in the petition (ECF No. 1) and the traverse (ECF No. 19) that the trial judge clearly stated multiple times on the record, that the jury had not been sworn. (LD 1 at 65-66, 294; ECF No. 19 at 32.)   Rather, he argues the court should find that jeopardy constructively attached.

"Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier having jurisdiction to try the question of

16

guilt or innocence of the accused.  Without risk of a determination of guilt, jeopardy does not

attach, and neither an appeal nor further prosecution constitutes double jeopardy." <u>Serfass</u>, 420

U.S. at 391-92 (citations and quotations omitted).

The court declines to find that jeopardy attached, because it is clear from the record that

the jury had not been sworn.  Accordingly, petitioner is not entitled to habeas relief based on his

argument that jeopardy had constructively attached when the jury was discharged.

**IV.     Violation of Prior Order Granting Habeas Relief**

Petitioner claims his rights were violated because after his prior petition for writ of habeas

corpus was conditionally granted, that court's order was violated because his retrial failed to

commence within 90 days as instructed in the order granting relief.  (ECF No. 1 at 8.)

Respondent argues that petitioner's claim that the warden failed to comply with the

federal court's 2012 order granting habeas relief and ordering retrial to commence within 90 days

is not cognizable in habeas.  (ECF No. 14 at 15.)  They argue that petitioner's remedy for

violation of the 2012 order was filing an appeal of that order.

"[A] conditional order of release . . . orders the State to release the petitioner unless the

State takes some remedial action, such as to retry (or resentence) the petitioner."  <u>Harvest v.</u>

<u>Castro</u>, 531 F.3d 737, 741-42 (9th Cir. 2008).  "[W]hen a state meets the terms of the habeas

court's condition, thereby avoiding the writ's actual issuance, the habeas court does not retain any

further jurisdiction over the matter."  <u>Gentry v. Deuth</u>, 456 F.3d 687, 692 (6th Cir. 2006)

(citations omitted); <u>see also</u> <u>D'Ambrosio v. Bagley</u>, 656 F.3d 379, 384 (6th Cir. 2011) ("[A]

district court sitting in habeas has jurisdiction to consider the circumstances that exist up until

either the state complies with a conditional writ or the court issues an unconditional writ, but does

not have jurisdiction to consider circumstances that unfold after the state complies with the writ."

(citations omitted).

After the March 19, 2012 order was issued, the state of California indicated on April 12,

2012 that it intended to retry petitioner.  <u>See</u> <u>Williams v. Woodford</u>, No. 2:05-cv-0980 AK, (E.D.

Cal.) (ECF No. 46).  Shortly thereafter, the warden released petitioner from the California

Department of Corrections and Rehabilitation, the Sheriff of Sacramento County took custody of

petitioner, who was held as a pretrial detainee. (See ECF No. 14 at 38, (showing that as of May 3, 2012 petitioner was placed in custody of Sacramento County Sheriff for appearance as a defendant)). In May 2012, the Sacramento Superior Court again arraigned petitioner on the original felony complaint and counsel was appointed. (LD 1 at 15-16.) Upon review, it is clear that petitioner was no longer held pursuant to the original conviction. Rather, he was held pursuant to the original complaint that was once again imposed by the state of California.

To the extent petitioner argues he was not released, such an argument is unsupported by the evidence presented. Additionally, as respondent argues, to the extent petitioner sought enforcement of the March 2012 order his remedy was to appeal the decision to discharge the order to show cause. See Satterlee v. Wolfenbarger, 453 F.3d 362, 365 (6th Cir. 2006) (state appealed district court order granting an unconditional writ). Petitioner cannot pursue the alleged non-compliance of that order via a federal habeas petition and the court cannot exercise jurisdiction over such a claim in this proceeding.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that petitioner's petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to the Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within twenty (20) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In the objections, the parties may address whether a certificate of appealability should issue in the event an appeal of the judgment in this case if filed. See Rule 11, Rules Governing § 2254 Cases (the

////

////

18

1   district court must issue or deny a certificate of appealability when it enters a final order adverse

2   to the applicant).

3   Dated: August 4, 2021

4

5                                                                    _____

6                                                                    DEBORAH BARNES
                                                                     UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13   DB:12
     DB/DB Prisoner Inbox/Habeas/S/will2224.f&rs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19